IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| KENNETH R. JOHNSON | § | |
|     TDCJ-CID #1536748 | § | |
| v. | § | C.A. NO. V-10-025 |
| | § | |
| RICK THALER, ET AL. | § | |

**OPINION AND ORDER REGARDING
CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff is an inmate in the Texas Department of Criminal Justice, Correctional Institutions Division ("TDCJ"), who is currently incarcerated at the Stiles Unit in Beaumont, Texas. Proceeding pro se, he filed a civil rights action pursuant to 42 U.S.C. § 1983, alleging that Defendant John Adams was deliberately indifferent to his health and safety. (D.E. 1, at 4). Pending is Plaintiff's motion for summary judgment. (D.E. 34). Defendant has filed a cross-motion for summary judgment in his favor. (D.E. 43). Plaintiff submitted a response brief opposing this cross-motion for summary judgment. (D.E. 46). For the reasons that follow, Plaintiff's motion for summary judgment is denied, Defendant's cross-motion for summary judgment is granted, and this action is dismissed.

## I. JURISDICTION

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331. Upon consent of the parties, (D.E. 33, 36), the case was assigned to a United States Magistrate Judge to conduct all further proceedings, including entry of final judgment. (D.E. 14); see also 28 U.S.C. § 636(c).

## II. PROCEDURAL HISTORY

Plaintiff filed this action on March 30, 2010. (D.E. 1). A Spears[1] hearing was held on August 24, 2011. On September 30, 2011, his deliberate indifference claim against Officer John Adams was retained, and all other claims against all other named Defendants were dismissed. Johnson v. Thaler, No. V-10-025, 2011 WL 4592384 (S.D. Tex. Sept. 30, 2011) (unpublished).

Defendant Adams filed an answer on January 6, 2012. (D.E. 31). On January 30, 2012, Plaintiff submitted a motion for summary judgment. (D.E. 34). He subsequently filed an amended complaint on February 27, 2012. (D.E. 42). On March 1, 2012, Defendant filed a cross-motion for summary judgment. (D.E. 43). Plaintiff filed a response on March 27, 2012 opposing Defendant's cross-motion for summary judgment. (D.E. 46).

## III. PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that Defendant Adams exhibited deliberate indifference to his health and safety in violation of his Eighth Amendment right against cruel and unusual punishment. (D.E. 1, at 4). Specifically, he complains that Defendant Adams recklessly drove a vehicle in which he was a passenger and caused an accident. Id. As a consequence, he claims that he sustained multiple significant injuries. Id.

## IV. SUMMARY JUDGMENT EVIDENCE

Plaintiff offers uncontested records of his administrative grievance filings, (D.E. 34-1), as well as various unverified medical records. (D.E. 34-2). In turn, Defendant has submitted the following documents in support of his cross-motion for summary judgment:

Exhibit A:  Affidavit of John Adams;

---

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

      Exhibit B:    Affidavit of Sergeant Donny Valis;

      Exhibit C:    Affidavit of Robert Mendez; and

      Exhibit D:    TDCJ Motor Vehicle Accident Investigation with Supporting Business Record Affidavit.

(D.E. 43, at 1).

To the extent that the parties do not materially disagree on the operative facts forming the basis of this action, the summary judgment evidence, including the Plaintiff's testimony at the Spears hearing, establishes the following:

Early on the morning of January 12, 2010, Defendant Adams was assigned to drive a van from the Stevenson Unit in Cuero, Texas to the Connally Unit in Kenedy, Texas. (D.E. 43-1, at 2). Officer Donny Valis, Plaintiff, and two other inmates were aboard as passengers. (D.E. 43-1, at 2; D.E. 43-2, at 2). Because the van was not equipped with seat belts for the inmate passengers, Plaintiff was not secured within the vehicle. (D.E. 43-1, at 4). He was, however, chained to a larger inmate.

Before dawn at around 6:30 a.m., Defendant Adams was driving on Highway 72 when he and Officer Valis spotted a deer standing on the shoulder of the opposite lane. (D.E. 43-1, at 3; D.E. 43-2, at 3). The deer then darted into the van's path, resulting in a collision. (D.E. 43-1, at 3; D.E. 43-2, at 3). After contacting their supervisor, they were instructed to continue transporting the inmates to the Connally Unit. (D.E. 43-1, at 3; D.E. 43-2, at 3). When they arrived, both the officers and the inmate passengers were given a physical evaluation. (D.E. 43-1, at 3; D.E. 43-2, at 3). No injuries were recorded at that time by the medical provider. (D.E. 43-4, at 12-16). In addition, no damage to the van was reported. Id. at 11. Pictures of the van show a minor dent on the front bumper. Id. at 17-21.

On January 17, 2010, Plaintiff filed a Step 1 grievance charging prison staff with denying and interfering with his activities in violation of TDCJ policy. (D.E. 34-1, at 1-2). He alleged that on January 12, 2010, Defendant drove into the deer because he was sleeping while driving. Id. at 1. During the collision, he was thrown around the van and injured his neck, back, and legs. Id. at 1. Plaintiff expressed his dissatisfaction with the medical staff's response because they purportedly misdiagnosed and mistreated his injuries. Id. In particular, he recounted that he was not permitted to eat on an occasion when a nurse erroneously believed he was suffering from gastrointestinal problems. Id. He also complained that he was only given ibuprofen to treat his injuries from the accident. Id. at 2. As a remedy, Plaintiff requested that he be given "adequate medical treatment for my back & legs and therapy hot packs, muscle spasm all over my neck too." Id. Rudy Martisek denied this grievance on February 12, 2010 because the medical staff had not noted any acute distress immediately after the accident. Id. at 2. Although his neck and back pains were acknowledged, he was advised to continue taking medications and cooperate with the medical staff. Id.

Plaintiff then filed a Step 2 grievance on March 2, 2010 reiterating his dissatisfaction with the treatment of his injuries. Id. at 3-4. He also questioned the rationale behind Mr. Martisek's decision, explaining that he did complain about his injuries during a sick call. Id. at 3. Although he does not refer to Defendant by name in this grievance, he accuses him of sleeping and playing video games while on the job. Guy Smith denied this grievance on May 17, 2010. Id. at 4. Mr. Smith reiterated that medical personnel did not detect any sign of injury after the accident, and he found that Plaintiff was being given sufficient medical care. Id.

4

On February 25, 2010, Plaintiff submitted another Step 1 grievance. (D.E. 34-2, at 2). He again described the accident and complained about Mr. Martisek's denial of his first Step 1 grievance. Id. at 1. He sought to have officials check the computer records to confirm that he did complain about suffering an injury. Id. at 2. Mr. Martisek answered this grievance on March 8, 2010, and pointed out that Plaintiff had been examined for his back and neck pain at least three times during the previous month. Id. No Step 2 grievance is noted in the record.

## V.  DISCUSSION

Plaintiff moves for summary judgment on the basis that there is no genuine issue of material fact and that judgment should be entered in his favor as a matter of law. (D.E. 34, at 4). In response, Defendant also moves for summary judgment, arguing that Plaintiff's claims have not been fully exhausted and are barred by the doctrine of qualified immunity. (D.E. 43, at 11, 15).

**A.     The Legal Standard For A Summary Judgment Motion.**

Summary judgment is appropriate when there is no disputed issue of material fact, and one party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Courts must consider the record as a whole, including all pleadings, depositions, affidavits, interrogatories and admissions on file, in the light most favorable to the non-movant. Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002) (citations omitted).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact and informing the court of the basis for its motion by identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which support its contention. Celotex Corp. v. Catrett, 477 U.S.

317, 323 (1986); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 913 (5th Cir. 1992) (citations omitted). Any controverted evidence must be viewed in the light most favorable to the non-movant, and all reasonable doubts must be resolved against the moving party. See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); Williams v. Adams, 836 F.2d 958, 960 (5th Cir. 1988) (citation omitted).

If the moving party makes the required showing, then the burden shifts to the non-movant to show that a genuine issue of material fact remains for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); Fields v. City of S. Houston, Tex., 922 F.2d 1183, 1187 (5th Cir. 1991) (citation omitted). The non-movant cannot merely rest on the allegations of the pleadings, but must establish that there are material controverted facts in order to preclude summary judgment. Fed. R. Civ. P. 56(c)(1); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986) (citation omitted). Summary judgment is proper if the non-movant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof. Celotex, 477 U.S. at 322-23; ContiCommodity Servs., Inc. v. Ragan, 63 F.3d 438, 441 (5th Cir. 1995) (citations omitted).

**B.     Plaintiff Failed To Properly Exhaust His Administrative Remedies.**

Defendant urges dismissal of Plaintiff's claim due to his purported failure to exhaust his administrative remedies with the TDCJ. (D.E. 43, at 15-19). While he acknowledges that grievances were filed, he contends that these complaints did not contain enough factual details to give administrators reasonable notice about the existence of any claim against Defendant Adams. Id. at 17.

In the Prison Litigation Reform Act ("PLRA"), Congress mandated that inmates must exhaust their administrative remedies prior to filing civil rights actions:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The exhaustion requirement applies to all inmate suits about prison life, whether involving general circumstances or specific incidents. Porter v. Nussle, 534 U.S. 516, 532 (2002); Clifford v. Gibbs, 298 F.3d 328, 330 (5th Cir. 2002); accord Irby v. Nueces County Sheriff, 790 F. Supp. 2d 552, 557 (S.D. Tex. 2011) (citations omitted). Moreover, a prisoner is required to exhaust his administrative remedies even if damages are unavailable through the grievance process. Booth v. Churner, 532 U.S. 731, 734 (2001); Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001); accord Irby, 790 F. Supp. 2d at 557 (citations omitted). The Supreme Court has clarified that a prisoner must complete the administrative review process in accordance with all procedural rules, including deadlines, as a precondition to bringing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 93 (2006); accord Irby, 790 F. Supp. 2d at 557 (citing Woodford). However, an inmate's failure to exhaust is an affirmative defense that must be raised by the defendants. See Jones v. Bock, 549 U.S. 199, 216 (2007); accord Irby, 790 F. Supp. 2d at 557 (citing Jones).

The purpose of the exhaustion requirement is to alert jail officials to problems so that the prison has a chance to address the claims before they reach federal court. Woodford, 548 U.S. at 94. As acknowledged by the Supreme Court, Congress intended the administrative process to "filter out some frivolous claims and foster better-prepared litigation once a dispute did move to the courtroom, even absent formal factfinding." Booth, 532 U.S. at 737.

In Johnson v. Johnson, 385 F.3d 503 (5th Cir. 2004), the Fifth Circuit discussed how much detail is required in a grievance for purposes of effectively exhausting administrative remedies. The court noted that one of the purposes of the exhaustion requirement is to give officials "'time and opportunity to address complaints internally.'" Id. at 516 (citations omitted); accord Wilbert v. Quarterman, 647 F. Supp. 2d 760, 766 (S.D. Tex. 2009) (citation omitted). In addition, the nature of the complaint will influence how much detail is necessary. Johnson, 385 F.3d at 517; Wilbert, 647 F. Supp. 2d at 766 (citation omitted). For example, a complaint about a correctional officer should identify a specific person, whereas a complaint about a prison condition might not need to identify any individual. Johnson, 385 F.3d at 517; Wilbert, 647 F. Supp. 2d at 766 (citation omitted).

The TDCJ provides a two-step procedure for presenting administrative grievances. Powe v. Ennis, 177 F.3d 393, 394 (5th Cir. 1999) (per curiam) (citation omitted). An inmate properly exhausts a claim by presenting it in Step 1 and Step 2 grievances. See Wendell v. Asher, 162 F.3d 887, 891 (5th Cir. 1998) (citing to TDCJ Administrative Directive No. AD-03.82 (rev. 1), Policy ¶ IV (Jan. 31, 1997)). A claim must be pursued through both grievance steps before it can be considered exhausted. Johnson, 385 F.3d at 515 (citing Wright, 260 F.3d at 358).

Exhaustion is not required when the remedy sought is not "available," such as "where the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint." Booth, 532 U.S. at 736 & n.4; accord Dillon v. Rogers, 596 F.3d 260, 267 (5th Cir. 2010). The Fifth Circuit has also recognized that a remedy is not "available" when "(1) an inmate's untimely filing of a grievance is because of a physical injury and (2) the grievance system rejects the inmate's subsequent attempt to exhaust his remedies

8

based on the untimely filing of the grievance." Days v. Johnson, 322 F.3d 863, 868 (5th Cir. 2003) (per curiam), overruled by implication on other grounds by Jones, 549 U.S. at 216. Nevertheless, the Fifth Circuit has taken "a strict approach to the exhaustion requirement" ever since the PLRA's enactment in 1996, which made exhaustion mandatory. Days, 322 F.3d at 866 (citations omitted). Due to the now-mandatory nature of § 1997e, previously viable exceptions to the exhaustion requirement are no longer applicable. See Clifford, 298 F.3d at 332 (amended version of § 1997e forecloses prior exhaustion defenses of undue prejudice, inadequate remedy, and administrative bias). As a result, the Fifth Circuit channels all claims for excuse of exhaustion into an analysis of whether any administrative remedies were "available" to the prisoner within the meaning of § 1997e(a). Dillon, 596 F.3d at 270.

Plaintiff has submitted his grievance records in support of his motion for summary judgment.[2] Defendant claims that these "grievances did not contain sufficient detail to properly exhaust his administrative remedies ... because they did not contain the degree of information TDCJ officials would want to know." (D.E. 43, at 17). Although these grievances provide some details about the accident, it is apparent that Plaintiff's objective in filing these grievances was to obtain better medical treatment rather than to hold Defendant accountable for his injuries. As a consequence, Plaintiff failed to allege sufficient facts that could have put the TDCJ on notice about any claim of deliberate indifference against Defendant. He omitted a number of important details from his grievance that would have suggested deliberate indifference, such as the assertions he made at the Spears hearing that Defendant was driving erratically as well as

---

[2] Plaintiff confirms that these were the only grievances he filed regarding this matter in his response brief. (D.E. 46, at 3). Although these documents have not been verified by affidavit, Defendant does not contest the admissibility of these grievances pursuant to Rule 56(c)(2). He even treats these filings as competent summary judgment evidence by citing to them in support of his cross-motion for summary judgment. (D.E. 43, at 17-18).

9

speeding, that other passengers had voiced concerns about his driving during the trip, that he failed to secure him with a seat belt, and that he chained him to a heavier inmate. Simply put, these grievances are devoid of sufficient facts essential to a deliberate indifference claim. In addition, nothing in these grievances indicated that Defendant was aware of and indifferent to subjecting Plaintiff to a risk of harm. At most, the bare allegation that Defendant fell asleep while driving tends to show only non-actionable negligence rather than deliberate indifference.

In response, Plaintiff argues that any further attempt to exhaust his administrative remedies would have been futile. He cites to the Second Circuit decision Eisen v. Eastman, 421 F.2d 560 (2d Cir. 1969), and the Supreme Court decision Houghton v. Shafer, 392 U.S. 639 (1968) (per curiam), in support of his proposition that a futility exception to exhaustion applies. These cases are unavailing because they do not involve the application of the most recent version of § 1997e, which was amended by the PLRA in 1996. Regardless of whether Plaintiff believed proper exhaustion of his claims was futile, "[e]xhaustion is now mandatory." Days, 322 F.3d at 866; see also Booth, 532 U.S. 731, 741 n.6 ("we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise") (citations omitted); Mesquiti v. Gallegos, 427 F. App'x 377, 378 (5th Cir. 2011) (per curiam) (unpublished) ("there is no futility exception to the exhaustion requirement") (citing Booth). Moreover, he has failed to show that an administrative remedy was not "available" within the meaning of § 1997e(a). There has been no claim that the administrative procedure lacked authority to provide any relief or take any action. Nor has he suffered some physical injury preventing him from timely filing his grievances. To the contrary, he was able to timely file grievances complaining about his

injuries. (D.E. 34-1, at 1-4). Accordingly, Plaintiff has not properly exhausted his deliberate indifference claim against Defendant Adams.

**C.     Defendant Is Entitled To Qualified Immunity.**

In the alternative, Defendant Adams argues that he is entitled to qualified immunity because Plaintiff has not established a deliberate indifference claim against him and because he acted reasonably under the circumstances. (D.E. 43, at 7-15).

The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam) (citation omitted). "To discharge this burden, a plaintiff must satisfy a two-prong test." Atteberry v. Nocana Gen. Hosp., 430 F.3d 245, 253 (5th Cir. 2005). "First, he must claim that the defendants committed a constitutional violation under current law. Second, he must claim that defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." Id. (citations omitted). While it will often be appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation occurred and then determining whether the constitutional right was clearly established, that ordering of the analytical steps is no longer mandatory. Pearson, 555 U.S. at 236-37 (receding from Saucier v. Katz, 533 U.S. 194 (2001)).

### 1.	Step 1 – Plaintiff has not established a constitutional violation.

The Eighth Amendment imposes a duty on prison officials to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and ... 'take reasonable measures to guarantee the safety of the inmates.'"  Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).  A prison official violates this duty when by act or omission he is deliberately indifferent to prison conditions which pose a substantial risk of serious harm.  Id. at 828-29, 834 (citations omitted).  In order to state an Eighth Amendment claim for deliberate indifference, a plaintiff must satisfy a two-prong test:

> First, there is an objective requirement that the condition "must be so serious as to 'deprive prisoners of the minimal civilized measure of life's necessities,' as when it denies the prisoner some basic human need."  Second, under a subjective standard, we must determine whether the prison official responsible was "'deliberately indifferent' to inmate health or safety."

Woods v. Edwards, 51 F.3d 577, 581 (5th Cir. 1995) (per curiam) (citations omitted).  The Supreme Court has recognized that "reasonable safety" is a basic human need.  Helling v. McKinney, 509 U.S. 25, 33 (1993) (citing DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 200 (1989)).

Subjective deliberate indifference requires that the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer, 511 U.S. at 837.  This standard requires more than mere negligence on the part of prison officials.  See id. at 835 ("deliberate indifference describes a state of mind more blameworthy than negligence"); Adames v. Perez, 331 F.3d 508, 514 (5th

Cir. 2003) (citing Farmer). Rather, subjective deliberate indifference amounts to criminal recklessness. Farmer, 511 U.S. at 839-40. The Fifth Circuit has understood that "[d]eliberate indifference 'is an extremely high standard to meet.'" Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006) (citations omitted).

Plaintiff alleged that he was seriously injured when Defendant fell asleep while driving and hit a deer. (D.E. 1, at 4-5). At the Spears hearing, he also asserted that Defendant was driving recklessly, speeding, and had driven over a number of rumble strips on the shoulder of the road, suggesting that he was driving while sleeping. Plaintiff further testified that he was not secured inside the van with a seat belt and that he was chained to a heavier inmate. After the collision with the deer, he heard Officer Valis remark to Defendant that he must have been sleeping.

Defendant counters that, taken as true, Plaintiff's allegations amount to nothing more than "gross negligence claims masquerading as a Constitutional violation." (D.E. 43, at 8). He has also submitted numerous affidavits that directly conflict with Plaintiff's account of the accident and the events leading up to it. Specifically, Defendant testified that he was never asleep, fatigued, or driving erratically during the trip, and he further claims that he purposely did not swerve to avoid hitting the deer because he did not want to risk flipping the top-heavy vehicle. (D.E. 43-1, at 3-4). He further avers that the van was not equipped with seat belts for inmate passengers and did not hear inmates requesting any seat belts before the accident. Id. at 4. Officer Valis testified that although he warned Defendant about the deer on the shoulder of opposite lane, the deer unexpectedly ran directly into the path of the oncoming van. (D.E. 43-2, at 3). Finally, Robert Mendez, the City Administrator for Yorktown, Texas has testified that

there have never been rumble strips where the accident occurred, or on any portion of Highway 72. (D.E. 43-3, at 2-3).

Based on Plaintiff's pleadings and his Spears testimony, he cannot successfully pursue a deliberate indifference claim against Defendant as a matter of law. He has alleged no facts tending to show that Defendant was subjectively aware of a substantial risk of serious harm with respect to the way that he secured the passengers to the van or his ability to safely operate the van that morning. Nothing in the record indicates that Plaintiff requested seat belts, protested Defendant's driving, or otherwise attempted to alert him to the risk that his driving posed to the passengers' safety. Even if Plaintiff established that Defendant should have been aware of the risk, he still has not taken the crucial additional step of showing that Defendant was actually subjectively aware that his driving was unsafe. As such, Plaintiff has not pled facts suggesting there was an act of deliberate disregard to his safety.

While some courts have found that the failure to secure inmates with seat belts during transportation can contribute to a finding of deliberate indifference, no court has held that such an omission, standing alone, constitutes deliberate indifference. In Brown v. Missouri Department of Corrections, the Eighth Circuit held that the plaintiff may proceed with a constitutional claim against defendants who refused his requests to fasten him with a seat belt and drove in an inherently unsafe manner. 353 F.3d 1038, 1040 (8th Cir. 2004) (per curiam) (citations omitted). Following remand, the case again appeared before the Eighth Circuit in Brown v. Fortner, 518 F.3d 552 (8th Cir. 2008). On this occasion, the Eighth Circuit was asked to rule on whether two particular defendants were entitled to qualified immunity on the basis of their actions. The first defendant allegedly denied the plaintiff's request for a seat belt, drove in

14

excess of the speed limit, followed too closely to the lead van in the convoy transporting inmates, violated other traffic rules, and ignored the repeated requests of the inmate-passengers who asked him to slow down. Id. at 559-60. The court ruled that this defendant was not entitled to qualified immunity because "a reasonable jury could conclude that there was a substantial risk of harm to [plaintiff] and that [defendant] knew of and disregarded the substantial harm." Id. at 560. Similarly, the second defendant was also accused of driving in excess of the speed limit and passing other vehicles at inappropriate times. Id. at 560. Nevertheless, this defendant was entitled to qualified immunity because there was no evidence that he was asked to slow down and refused, nor was evidence presented showing that this defendant actually knew the plaintiff was not secured by a seat belt. Id. at 560. As a result, he lacked "actual knowledge of a substantial risk." Id.

     The Eighth Circuit's finding accords with Barela v. Romero, in which the court found that the defendant was subjectively aware of the risk posed to the plaintiff when he refused to heed the plaintiff's requests to stop the transport van, which was not equipped with seat belts. No. 06-41, 2007 WL 2219441, at *7 (D.N.M. May 10, 2007) (unpublished). Moreover, each of these cases are consistent with case law from other courts holding that the mere failure to fasten seat belts on inmates does not constitute deliberate indifference. See Dexter v. Ford Motor Co., 92 F. App'x 637, 641 (10th Cir. Feb. 12, 2004) (unpublished) (concluding that "failure to seatbelt does not, of itself, expose an inmate to risks of constitutional dimension" because "[t]he eventuality of an accident is not hastened or avoided by whether an inmate is seatbelted"); Wilbert, 647 F. Supp. 2d at 769 (citing Brown, 518 F.3d at 560); Freeman v. City of Hattiesburg

Police Dep't, No. 2:07-cv-159, 2007 WL 4180538 (S.D. Miss. Nov. 20, 2007) (unpublished) (applying Dexter).

In sum, Plaintiff must show that Defendant was actually aware that he was subject to a substantial risk of injury to survive summary judgment. In his response brief, he references the fact that Officer Valis warned Defendant about the deer. (D.E. 46, at 2). Plaintiff believes that this warning made Defendant aware of the risk to his safety and should have prompted him to either slow down, go around the deer, or stop the van. Id. In addition, he suggests that Defendant's own statement that "I never swerve to avoid animals because swerving at that high rate of speed can cause the vehicle to flip" amounts to an admission that he was speeding. Id.; (D.E. 43-1, at 3).

Even if Defendant's affidavits were so construed in Plaintiff's favor, they do not alter the conclusion that he has not shown subjective deliberate indifference. Plaintiff has already pled that Defendant was driving at a high rate of speed. Moreover, mere knowledge of a risk does not mean that Defendant was deliberately indifferent to it, and based on the uncontested summary judgment evidence, it does not appear that continuing to drive amounted to deliberate indifference. According to Officer Valis, the deer was seen "standing on the left side of the highway on the shoulder" and "just before we came upon it, the deer darted to its left and into the westbound lane of the highway directly in front of us." (D.E. 43-2, at 3). Because the deer was not in their path, there was no need to stop or go around the animal. Additionally, it was initially spotted on the opposite side of the highway and therefore less likely to be hit by the van. While Defendant could have slowed down, the failure to do so does not evince subjective deliberate indifference because there was no apparent threat from the deer at the time.

Therefore, these affidavits cannot supplement the deficient pleadings to create a valid cause of action. Because Plaintiff has failed to show that Defendant was subjectively aware his driving posed an unacceptably high risk to his passengers, this deliberate indifference claim is without merit.

    **2.    Step 2 – Objective Reasonableness.**

Because Plaintiff has failed to state a constitutional violation as to Defendant regarding any of his claims, the Court is not required to examine whether his actions were reasonable. See Saucier, 533 U.S. at 201 (if the facts alleged do not establish that the officer's conduct violated a constitutional right, then the qualified immunity analysis need proceed no further and qualified immunity is appropriate).

### VI.  CONCLUSION

For the reasons set forth above, Plaintiff's motion for summary judgment, (D.E. 34), is DENIED. Defendant's cross-motion for summary judgment, (D.E. 43), is GRANTED, and this action, (D.E. 1), is DISMISSED.

ORDERED this 9th day of April 2012.

_____
BRIAN L. OWSLEY
UNITED STATES MAGISTRATE JUDGE